UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CHARLES EICKLEBERRY,                                          CIVIL NO. 11-443 (DSD/JSM)
            Petitioner,

v.                                                                   REPORT AND RECOMMENDATION

B.R. JETT, Warden,

            Respondent.

This matter is before the undersigned United States Magistrate Judge on Charles Eickleberry's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Docket No. 1] and Charles Eickleberry's Motion for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction should not Issue [Docket No. 6].  The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

## I.      FACTUAL BACKGROUND

Petitioner Charles Eickleberry ("Eickleberry") is serving a 282-month sentence, followed by two years of supervised release.  See Declaration of Julie Groteboer ("Groteboer Decl."), ¶ 3, Attach. A (Public Information Data).  Eickleberry is currently designated to the Federal Community Correction in Chicago, Illinois.  Eickleberry currently has a projected release date of December 28, 2011, via good conduct time release. Id.

Eickleberry was initially at Federal Correctional Institution Fort Dix, New Jersey ("FCI-Fort Dix") from April 14, 2008, through January 26, 2010.  See Groteboer's Decl., ¶ 7 [Docket No. 11-1].  On May 18, 2009, Eickleberry requested a review of his eligibility for up to 12 months of Residential Reentry Center ("RRC") placement.  Id., Attach. D, (Administrative Remedies), p. 27.  The Warden notified Eickleberry that he would be "reviewed on an individual basis, approximately 17-19 months before your projected

release date." Id., p. 25.  Eickleberry subsequently filed an appeal dated June 11, 2009, with the Regional Director, requesting that the Bureau of Prisons ("BOP") place him in an RRC for 12 months; the Regional Director denied his request, stating it was "premature to make any RRC recommendations at this time."  Id., pp. 23-24.  Eickleberry then filed an appeal on July 27, 2009, with the Central Office and his appeal was denied because "it is too soon for you to be considered for RRC placement" given his then projected release date of December 28, 2011.  Id., pp. 21-22.

Pursuant to the Second Chance Act ("SCA") and the five factors set forth in 18 U.S.C. § 3621(b), BOP staff reviewed Eickleberry on three separate occasions for RRC placement, prior to his habeas petition.  See Groteboer's Decl., ¶ 4.  During the three separate reviews, on June 29, 2010, September 21, 2010 and December 14, 2010, the BOP determined that RRC placement was not appropriate, as Eickleberry was pending relocation approval.  Id., Ex. B (Review for RRC).  In addition, a supervised relocation to Eickleberry's parents residence in Missouri was denied by the United States Probation Office ("USPO"), as his parents stated that they did not reside in Missouri on a full-time basis and that Eickleberry had no realistic approach to obtaining work as a union laborer given his health.  Id., Ex. C (Supervision Release Plan), pp. 14-15.  Further, a supervised relocation to Eickleberry's ex-wife in Du Quoin, Illinois was denied by the USPO to Southern District of Illinois, given that the ex-wife admitted to being convicted felon and therefore, it was not seen as positive environment for Eickleberry's release.  Id., pp. 18-19.

Eickleberry was designated to the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester") from March 24, 2010, to April 6, 2011.  See Groteboer's Decl., ¶ 3. Eickleberry did not file any additional administrative remedy requests concerning RRC

placement while at FMC-Rochester prior to his Petition.  Id., ¶ 8, Attach. E (Generalized Administrative Remedy Retrieval Data).

On March 2, 2011, Eickleberry's unit team conducted a further review of his eligibility for RRC placement, with supervision to his sentencing district. See Groteboer's Decl. ¶ 5, Attach. B (Review for RRC).  In determining whether RRC placement was appropriate for Eickleberry, his unit team considered the SCA and the five factors enumerated in 18 U.S.C. § 3621(b), including the resources of the facility contemplated, availability of resources in the community, the nature and circumstances of his offenses, his history and characteristics, any pertinent policy statement issued by the United States Sentencing Commission ("USSC"), and the resources available to Eickleberry—i.e., employment, family support and life skills, etc. Id.  The assessment also noted that the sentencing court did not make any recommendations concerning placing Eickleberry in a RRC. Id.  BOP unit staff determined that a RRC placement of 150-180 days would be recommended for Eickleberry, which was contingent on his being medically cleared. Id.; see also Declaration of Stuart Solmonson ("Solmonson Decl."), ¶ 3.

On February 22, 2011, Eickleberry filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that the BOP violated its duties under 18 U.S.C. § 3621(b) by failing to conduct a good-faith review of the individual factors outlined in 18 U.S.C. § 3621(b) to determine his eligibility for placement in a RRC, as required by the BOP's April 14, 2008 Memorandum that implemented the requirements of the SCA. See Petitioner's Brief in Support of Motion for Habeas Corpus ("Pet.'s Mem."), pp. 4-6.  In support of his contention that the BOP failed to afford him with individualized consideration for RRC placement Eickleberry stated: (1) he was previously denied consideration for RRC based

3

on the fact that such consideration was premature; (2) BOP failed to asses him while in FMC-Rochester; (3) at the time of the filing of the Petition he was within ten months of release date; and (4) he was an ideal candidate for RRC placement.  Id., pp.  6-7. Eickleberry argued for his immediately placement in an RRC or home confinement.[1]  Id., p. 9.

In its opposition to the Petition, Respondent countered that the BOP performed the necessary individual determination regarding Eickleberry's eligibility for placement in an RRC, in the form of four separate reviews, pursuant to the SCA and the five factors outlined in 18 U.S.C. § 3621(b).  See Government Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Motion for Temporary Restraining Order ("Resp.'s Mem."), p. 13. This included the March 2, 2011 assessment, whereby his unit team again considered the SCA and the five factors enumerated in 18 U.S.C. § 3621(b). Id., pp. 13-14. Respondent also noted that Eickleberry has no statutory or constitutional right to be transferred to a halfway house. Id., pp. 15-17.

In reply, Eickleberry argued that he did not receive any notice of the RRC determination until April 19, 2011 and that without filing his habeas petition, the Respondent would not have taken any action.  See Petitioner's Response to Government Response to Writ of Habeas Corpus 28 U.S.C. § 2241 and Motion for Temporary Restraining Order ("Pet.'s Reply"), pp. 2-3.  In addition, he asserted that he needed medical care prior to his transfer from FMC-Rochester, which included hip therapy and possible surgery for

---

[1]     This Court notes that it appears that Eickleberry has been placed into a RRC in Chicago, but given his request for home confinement for the remainder of his term, the Court will not find the Petition moot.

nosebleeds, and was not examined by a physician prior to his reduction of care level.  Id.,

p. 3.

On March 8, 2011, Eickleberry's physician signed a medical transfer summary,

indicating Eickleberry had completed his medical treatment. See Groteboer Decl., ¶ 6;

Solmonson Decl., ¶ 4.  Eickleberry was reduced from a Care Level Four to a Care Level

One inmate because he was no longer in need of medical treatment. See Groteboer Decl.,

¶ 6; Solmonson Decl., ¶ 4. Based on the redesignation, a request was initiated for

Eickleberry's return to his parent institution, FCI-Fort Dix.  Id.

Subsequently, Eickleberry filed a motion seeking to enjoin his transfer from FMC-

Rochester to another prison outside of the District of Minnesota.  According to Eickleberry,

after he filed the instant suit, he was notified that he was going to be transferred to another

prison.  Believing that the transfer will be to a prison located outside of the District of

Minnesota, Eickleberry asserted that the transfer would render this Court without subject

matter jurisdiction over his Petition and "effectively [deny] him the relief he seeks." See

Memorandum of Law in Support of Motion to for a Temporary Restraining Order and Order

to Show Cause Why A Preliminary Injunction Should Not Issue ("Pet.'s TRO Mem."), p. 1

[Docket No. 7]; Affidavit, p. 2 [Docket No. 8].  Eickleberry also claimed that the transfer was

in retaliation for his commencement of the instant suit, and has requested that the transfer

out of the District be stopped.  Id., p. 2.

On April 7, 2011, the Court issued the following Order:

> By this Order, the Court is directing respondent to state in
> writing either (1) that if petitioner is transferred out of the
> District of Minnesota, this Court will retain jurisdiction over
> petitioner's habeas petition and that he will not seek to dismiss
> the Petition, or (2) respond to the substance of petitioner's

motion.  If respondent does agree that a transfer of petitioner out of the District of Minnesota will not affect the jurisdiction of this Court to decide the petition and will not result in dismissal of his petition, then petitioner will have obtained the relief he seeks by motion, and respondent is free to transfer petitioner, subject to petitioner's right to seek to amend the petition to add a claim of retaliation, if he so chooses.  However, if respondent opposes the merits of petitioner's motion, then petitioner cannot be transferred until the motion is decided.

April 7, 2011Order [Docket No. 9], p. 3.

On April 6, 2011, Respondent transferred Eickleberry from FMC-Rochester to FCI-Fort Dix, on the same day the Government received ECF notification at 3:54 p.m. of the filing of Eickleberry's motion and before the Court issued its April 7, 2011 Order.  <u>See</u> ECF Notice transmitting Docket No. 6; Groteboer Decl. ¶ 6; Solmonson Decl. ¶ 4.  However, in his memorandum, Respondent represented that "[a]lthough Eickleberry is no longer incarcerated in the District of Minnesota, Respondent will not seek dismissal of his habeas petition or motion for a TRO, and the Court may, at its discretion, retain jurisdiction over these matters."  <u>See</u> Resp.'s Mem., p. 12.

## II.    STATUTORY AND REGULATORY BACKGROUND

### A.    <u>Background to Second Chance Act of 2007, 18 U.S.C. § 3624(c)</u>

The starting place for the history leading up the Second Chance Act of 2007, 18 U.S.C. § 3621(b), which provides:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—

> (1)    the resources of the facility contemplated;
> (2)    the nature and circumstances of the offense;
> (3)    the history and characteristics of the prisoner;
> (4)    any statement by the court that imposed the sentence. . . .
> (5)    any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

Another statute, 18 U.S.C. § 3624(c), directs the BOP to give special attention to the housing assignments of prisoners who are approaching the end of their sentences in order to help them successfully re-enter society upon being released from custody.  Prior to April 9, 2008, § 3624(c), provided in relevant part:

> (c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last ten per centum of the term to be served under conditions that will afford the Prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c) (emphasis added), amended by 18 U.S.C. § 3624(c) (April 9, 2008).

In December 1998, the BOP issued Program Statement 7310.04, entitled "Community Corrections Center (CCC) Utilization and Transfer Procedures."  Program Statement 7310.04 directed the BOP to make RRC recommendations "based on assessments of inmate needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly," and stated that a number of factors must be

weighed in determining the length of RRC placement including, the inmates "individual needs and existing community resources".  Program Statement 7310.04 (Dec. 16, 1998) at 7, http://www.bop.gov/policy/progstat/7310_004.pdf.  In addition, the Statement provided that the BOP "may place an inmate in a [RRC] for more than the 'last ten per centum of the term,' or more than six months if appropriate" (id. at 4),[2] but also stated that while "placement beyond 180 days is highly unusual, it is possible with 'extraordinary justification.'  In such circumstances, the Warden shall contact the Regional Director for approval. . . ."  Id. at 8.

Thus, before December 2002, the BOP understood that a RRC was a "place of imprisonment," and that, pursuant to § 3621(b), a federal prisoner could be assigned to a RRC at anytime during his sentence, although customarily, federal prisoners were sent to RRCs during the last six months of their sentences, to meet the transitional requirements imposed by § 3624(c).  But on December 13, 2002, the Office of Legal Counsel ("OLC") of the United States Department of Justice issued a memorandum, which declared that this longstanding interpretation and implementation of the housing assignment statutes was

---

[2]      As the Eighth Circuit explained in Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008) (discussed in detail in Section III.C, infra):

> [Program Statement 7310.04] opined that an RRC is a "penal or correctional facility" within the meaning of § 3621(b), and implicitly assumed that an RRC also is a "place of imprisonment." The statement reasoned that § 3624(c) did not restrict the use of RRCs to the last ten percent of the inmate's term, because § 3621(b) allows the BOP generally to "designate any available penal or correctional facility."

Id. at 754.  Also, as discussed later in this opinion, the Eighth Circuit in Miller upheld the "extraordinary justification requirement" set forth in Program Statement 7310.04.

incorrect.[3]

The OLC concluded that the term "place of imprisonment" could not include a RRC assignment, which meant that prisoners could not be assigned to RRCs pursuant to the general housing authority provided by § 3621(b).  Instead, the OLC decided that an inmate could be transferred to a RRC only as part of the pre-release programming mandated by § 3624(c).  According to the Memorandum, federal law prohibited offenders from being assigned directly to halfway houses, even though that practice has been used for many years, in many cases, with the universal approval of U.S. Attorneys, the BOP, and the federal judiciary.

The OLC Memorandum also included a brief reference to the BOP's longstanding practice of assigning federal prisoners to RRCs for the final six months of their sentences.  The Memorandum indicated that § 3624(c) authorized the BOP to assign a prisoner to a half-way house only for the lesser of (a) the last six months of his sentence, or (b) the last ten percent of his sentence.

The OLC Memorandum prompted Deputy Attorney General Larry D. Thompson to write his own Memorandum to the Director of the BOP.  That second Memorandum, which is dated December 16, 2002 (just three days after the OLC Memorandum) included the following paragraph addressing the BOP's practice of sending prisoners to halfway houses for the last six months of their sentences:

> The OLC opinion additionally notes that, while BOP does have limited statutory authority in 18 U.S.C. § 3624(c) to transfer an offender to a CCC prior to his release so as to "afford the prisoner a reasonable opportunity to adjust to and prepare for

---

[3]    The OLC Memorandum Opinion dated December 13, 2002, can be found at 2002 WL 31940146.

the prisoner's re-entry into the community," there are firm restrictions on such transfers. Specifically, the transfer may not exceed the <u>lesser</u> of (i) the last ten percent of the sentence imposed on the offender, i.e., the period of time in which the offender was committed to the custody of the BOP, or (ii) six months. The OLC opinion concludes that there are no bases for disregarding these time limitations.

(emphasis in the original).[4]

In response to this paragraph of the Thompson Memorandum, as well as the earlier OLC Memorandum, the BOP immediately changed its policies and practices for assigning prisoners to RRCs. The BOP announced that on a going forward basis, it would exercise its authority under § 3624(c) based on its new understanding of the law -- <u>i.e.</u>, that the statute itself allows a prisoner to be placed in a RRC only for the lesser of the last ten percent of his sentence or the last six months of his sentence.

Thereafter, federal prisoners challenged the BOP's new interpretation of § 3624(c) in numerous federal court cases. Some courts agreed with the BOP's new understanding and implementation of § 3624(c), but many others concluded that the BOP was wrong. The issue came before the Eighth Circuit Court of Appeals in <u>Elwood v. Jeter</u>, 386 F.3d 842 (8th Cir. 2004).

In <u>Elwood</u>, the court rejected the BOP's restrictive interpretations of §§ 3621(b) and 3624(c). The court held that "§ 3621(b) gives the BOP <u>the discretion</u> to transfer prisoners to CCCs <u>at any time during their incarceration</u>." <u>Id</u>. at 847 (emphasis added). The court further held that, pursuant to § 3624(c), "the BOP is <u>required</u> to place prisoners in 'conditions that will afford [them] a reasonable opportunity to adjust to and prepare for the

---

[4]      The Thompson Memorandum of December 16, 2002, can be found on the Internet at http://www.usdoj.gov/dag/readingroom/imprisonment.htm. The section of that

prisoner's re-entry into the community' during a reasonable part of the last ten percent of the prisoner's term, to the extent practicable [; but] [t]his duty shall not extend beyond the last six months of the prisoner's sentence." Id. (emphasis added); see also Miller, 527 F.3d at 755 ("Elwood [held] that § 3624(c) requires the BOP, when practicable, to transfer a prisoner to an RRC for a reasonable part of the last ten percent of his sentence, not to exceed six months, but …§ 3624(c) does not forbid the BOP from designating a prisoner to an RRC for more than ten percent of his sentence pursuant to its authority under § 3621(b).") (citation omitted) (emphasis in original).

In response to Elwood and a similar decision from the First Circuit, Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004), the BOP re-examined its RRC assignment policies, and on February 14, 2005, it adopted 28 C.F.R. §§ 570.20 and .21, which categorically limited an inmate's eligibility for pre-release to community confinement during the last ten percent of the prison sentence being served, not to exceed six months.  See Miller, 527 F.3d at 755.

On April 6, 2006, the Eighth Circuit declared regulations §§ 570.20 and 570.21 invalid and in conflict with 28 U.S.C. § 3621(b).  See Fults v. Sanders, 442 F.3d 1088, 1092 (8th Cir. 2008).  The Eighth Circuit, like several other circuits,[5] held that the BOP may not categorically determine the amount of time that a prisoner will be allowed to spend in community confinement, but in order to comply with 28 U.S.C. § 3621(b), must instead

Memorandum that is quoted in the text can be found at p. 2, § II.

[5]     The following courts also found the regulations to be invalid: Rodriguez v. Smith, 541 F.3d 1180, 1184-1189 (9th Cir. 2008); Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.3d 71, 85-87 (2d Cir. 2006); and Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 244 (3d Cir. 2005).  On the other hand, the First Circuit, found that §§ 570.20 and 570.21, were a reasonable exercise of BOP's discretion in carrying out its statutory duties under § 3621(b).  See Muniz v. Sabol, 517 F.3d 29, 38-40 (1st Cir. 2008).

exercise its discretion on a case-by-case basis and consider the particular circumstances of

the individual prisoner. In light of the various decisions invalidating §§ 570.20 and 570.21,

the BOP changed its position in the Eighth Circuit and in those circuits that had similarly

declared the regulations invalid, by resorting to back to Program Statement 7310.04 which

permitted RRC placements for longer than 180 days only with "extraordinary justification."

See Miller, 527 F.3d at 755.

Ultimately, any differences of opinion by the circuits was resolved by the Second

Chance Act of 2007, which amended 18 U.S.C. § 3624(c) effective April 9, 2008.  Section

3624(c) now provides in relevant part:

> (1) In General. The Director of the Bureau of Prisons shall, to
> the extent practicable, ensure that a prisoner serving a term of
> imprisonment spends a portion of the final months of that term
> (not to exceed 12 months), under conditions that will afford that
> prisoner a reasonable opportunity to adjust to and prepare for
> the reentry of that prisoner into the community.   Such
> conditions may include a community correctional facility.
>
> * * *
>
> (4) No limitations.--Nothing in this subsection shall be
> construed to limit or restrict the authority of the Director of the
> Bureau of Prisons under section 3621.
>
> * * *
>
> (6) Issuance of Regulations. The Director of the BOP shall
> issue regulations pursuant to this subsection not later than 90
> days after the date of the enactment of the Second Chance Act
> of 2007, which shall ensure that placement in a community
> correctional facility by the BOP is
>
> (A) conducted in a manner consistent with section 3621(b) of
> this title;
>
> (B) determined on an individual basis; and

12

> (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c)(1), (c)(6) (emphasis added).

The plain language of the amendment to § 3624(c) increased the maximum amount of pre-release placement time from six months to 12 months and required implementing regulations by the BOP designed to ensure that placement in a RRC by the BOP was done in a manner that is consistent with § 3621(b), determined on an individual basis, and was of a sufficient duration to "provide the greatest likelihood of successful reintegration into the community."  As before, § 3624(c) provided the BOP with discretion to determine whether and how long an inmate should spend in a halfway house before his release, so long as the pre-release placement was practicable and the BOP considered the factors set forth in § 3621(b).

**B.**   **April 14, 2008 Memorandum from the BOP's General Counsel to Chief Executive Officers**

Five days after enactment of the Second Chance Act, the BOP issued a Memorandum to Chief Executive Officers titled "Pre-Release Residential Reentry Center Placements Following the Second Chance Act of 2007" ("April 14, 2008 Memorandum"). The April 14, 2008 Memorandum provided guidance to BOP staff for RRC placement, as follows:

> **III.**
> **What procedural adjustments to current policy are required?**
>
> Staff must comply with PS 7310.04 in considering inmates for pre-release RRC placements, with the following adjustments:
>
> * * *

13

**(C)    Criteria for Pre-Release RRC Placements** -- The Act requires that inmates be individually considered for pre-release RRC placements using the following five-factor criteria from 18 U.S.C. § 3621(b):

(1)    The resources of the facility contemplated;
(2)    The nature and circumstances of the offense;
(3)    The history and characteristics of the prisoner;
(4)    Any statement by the court that imposed the sentence:
    (a)    concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
    (b)    recommending a type of penal or correctional facility as appropriate; and
(5)    Any pertinent policy statement issued by the U.S. Sentencing Commission.

\* \* \*

[I]n accordance with the Act, each individual inmate's pre-release RRC decision must be analyzed and supported under the five-factor criteria.

**Additionally**, the Act requires staff to ensure that each pre-release RRC placement decision is "of sufficient duration to provide the greatest likelihood of successful integration into the community." See 18 U.S.C. § 3624 (c)(6)(C) (amended). This means Bureau staff must approach every individual inmate's assessment with the understanding that he/she is now eligible for a maximum of 12 months pre-lease RRC placement. Provisions in PS 7310.04 that reflect any other possible maximum timeframe must be ignored.

**(D)    Regional Director Approval Required for Pre-Release RRC Placement Beyond Six Months** -- While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

14

<u>Arthur v. Roal</u>, No. 09-3043 (RHK/JSM), 2010 WL 3025019 at *5-6 (D. Minn. July 6, 2010) (quoting April 14, 2008 Memo) (emphasis in original).

The most noteworthy portion of the Memorandum for the purposes of this case are the statements by the BOP that inmate needs can generally be met by a RRC placement of six months or less and the responsibility for the approval for RRC placement of over six months lies with the Regional Director.

### C.   BOP Regulations Issued Pursuant to the Second Chance Act

On October 21, 2008, the BOP adopted new interim regulations, pursuant to § 3624(c), which revised 28 C.F.R. §§ 570.21 and 570.22 as follows:

> § 570.21 Time-frames.
>
> (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, <u>not to exceed twelve months</u>.
>
> (b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.
>
> (c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.
>
> § 570.22 Designation.
>
> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.

Pre-Release Community Confinement, 73 Fed. Reg. 62,440, 64,443 (Oct. 21, 2008) (emphasis added).

Absent from these regulations is any mention of the statement found in the April 18, 2008 Memorandum that inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less, or the requirement that the Regional Director's written concurrence must be obtained before submitting the placement to the RRC.

### D.   November 14, 2008 Memorandum from the BOP's General Counsel to Chief Executive Officers

On November 14, 2008, the BOP issued a Memorandum to Chief Executive Officers which provided, in relevant part, the guidance to BOP staff when an inmate requested transfer to a RRC and more than 12 months remained from an inmate's projected release date.  In a footnote to the November 14, 2008 Memorandum, the BOP stated:

> Previous guidance titled Pre-Release Residential Reentry Center Placements Following the Second Chance Act of 2007, was issued April 14, 2008, and remains in full effect.  That guidance instructs staff how to review inmates for pre-release RRC placement during their last 12-months of their incarceration…. Regulations relating to that guidance were issued on October 21, 2008, and are located at 28 C.F.R. §§ 570.21 and 570.22.

Arthur, 2010 WL 3025019 at *7 (quoting November 14, 2008 Memo).

Like Program Statement 7310.04 and consistent with the April 14, 2008 Memorandum, the November 14, 2008 Memorandum reminded BOP officials that for inmates requesting transfer to a RRC where more than 12 months remained on an inmate's projected release date, a "RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the Regional Director concurs." Id. at p. 3.  In short, the BOP's position with respect to inmates

16

seeking RRC placement prior to their last 12 months of incarceration and for a period in excess of six months was the same as it was before the enactment of the Second Chance Act – it could only occur when unusual or extraordinary circumstances justified such a placement and the Regional Director's permission had been obtained.

## III.    ANALYSIS

### A.    <u>Right to RRC or Home Placement</u>[6]

Eickleberry has requested that this Court direct Respondent for his immediately placement into a RRC or home confinement. <u>See</u> Pet.'s Mem. at p. 9.  To the extent that Eickleberry is claiming that he is entitled to a certain amount of RRC or home placement, his Petition should be denied and dismissed.  There is nothing in the plain text of 18 U.S.C. §§ 3621(b) or 3264(c) that gives inmates <u>the right</u> to immediate placement (up to 12 months) into a RRC.  Section 3621(b) gives the BOP the discretion "at any time" to place an inmate into "any available penal or correctional facility" and to "direct the transfer of an inmate from one penal or correctional facility to another." 18 U.S.C. § 3621(b).  "[Section] 3624(c) does not require placement in a CCC. It only obligates the BOP to facilitate the prisoner's transition from the prison system."  <u>Elwood</u>, 386 F.3d at 847.[7]  Section 3264(c)

---

[6]    The Government argued that Eickleberry's Petition should be dismissed on the grounds that he has not exhausted his administrative remedies. <u>See</u> Resp.'s Mem. at p. 3 14-17.  While exhaustion in § 2241 cases is generally required (<u>see</u> <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144 (1992)), "because the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional," this court may turn to the merits of Eickleberry's petition without regard to the exhaustion requirement. <u>Lueth v. Beach</u>, 498 F.3d 795, 797 n. 3 (8th Cir. 2007) (citations omitted).  As this Court has concluded that the Petition fails on its merits, this Court does not need to reach a decision as to whether Eickleberry failed to exhaust his administrative remedies, or whether requiring him to do so would have been futile.

[7]    The Eighth Circuit in <u>Elwood</u> found that the BOP has <u>discretion</u> to transfer prisoners at any time during their incarceration, but only has <u>the duty to consider</u> a transfer to a RRC

merely provides that pre-release placement into a RRC cannot exceed 12 months.  See 18 U.S.C. § 3264(c).  As such, this Court finds that there is no statutory requirement that entitles Eickleberry to RRC or home placement under the SCA.

This Court also rejects Eickleberry's assertion that the BOP failed to conduct a good-faith review of the individual factors outlined in 18 U.S.C. § 3621(b).  Section 3624(c) requires the BOP to do an individualized assessment of the RRC placement of inmates that is consistent with § 3621(b).  See 18 U.S.C. § 3624(c).  As stated previously, §3621(b) provides that when deciding where to house an inmate, the BOP should consider:

> (1)   the resources of the facility contemplated;
> (2)   the nature and circumstances of the offense;
> (3)   the history and characteristics of the prisoner;
> (4)   any statement by the court that imposed the sentence. . . .
> (5)   any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.

18 U.S.C. § 3621(b).  "[F]ederal law simply requires that the BOP make an individualized determination of the appropriate RRC period, with attention to the specific factors listed in 18 U.S.C. § 3621(b)."  McCarthy v. Federal Bureau of Prisons, NO. CIV. 10-745 (PJS/SRN) 2010 WL 4320507 at *2 (D. Minn. Sept. 29, 2010) (quoting O'Hara v. Rios, No. 08-5160, 2009 WL 3164724 at *2 (D. Minn. Sept. 28, 2009)).

The Review for Residential Reentry Center, Second Chance Act of 2007 form used in Eickleberry's RRC assessment considered the resources of the facility contemplated; the nature and circumstances of his offense; his history and characteristics, including his active

---

in the last six months of a sentence.  See Elwood, 386 F.3d at 847 (finding that the BOP's duty to place prisoners in conditions that will prepare the prisoner for re-entry into the community "shall not extend beyond the last six months of the prisoner's sentence.").

participation in education and vocational programs, his work performance; the fact he participated a drug education program; the fact he needed community resources; multiple offenses as part of his discipline history; his relevant prior record;   his participation in counseling programs; any statement by the sentencing court that imposed the sentence against Eickleberry; the fact that Eickleberry's was sentenced below the Sentencing Commission's guideline range for the offense for which he was convicted; and his resources, which included family support, specialized job skills as a welder, general skills, life skills and community resources. See Groteboer's Decl., ¶ 5, Attach. B (Review for Review for Residential Reentry Center, Second Chance Act of 2007, March 2, 2011).  This Court finds that the criteria considered used to recommend RRC placement for Eickleberry was consistent with the factors required to be considered in an RRC placement under § 3621(b) and § 3624, and he has not provided any evidence that the BOP did not act in good faith in making its determination as to his RRC placement. See Miller, 527 F.3d at 758 ("The inmates have not established, however, that the warden failed to consider the relevant statutory factors in denying their requests. Although the warden's responses were brief, the statute does not require the BOP to provide prisoners with a detailed statutory analysis whenever a prisoner requests an immediate transfer to an RRC. In Fults, we affirmed a district court order that simply required the BOP to consider such a request in 'good faith.' Fults, 442 F.3d at 1089. We see no evidence that the warden acted other than in good faith when he concluded that immediate RRC placement was not appropriate."). Thus, Eickleberry has received all he is entitled to under the SCA, and his Petition should be denied.[8]

---

[8]     In his reply, Petitioner noted that an [e]videntiary hearing may be appropriate

### B.   Motion for a TRO and Preliminary Injunction

Eickleberry filed a motion seeking to enjoin his transfer from FMC-Rochester to another prison outside of the District of Minnesota based on his concern that that the transfer would render this Court without subject matter jurisdiction over his Petition and on the basis that the transfer is in retaliation for his commencement of the instant suit.  As stated previously, the Respondent did not challenge the jurisdiction of this Court despite Eickleberry's transfer to another district.  See Resp.'s Mem., p. 12.  As such, any basis for an injunction is moot.  While Eickleberry has requested that the Court remedy any transfer

---

because there are issue and facts in dispute."  Pet.'s Reply, p. 4.

Section 2254(e)(2) provides:

> [i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254

The Court cannot hold an evidentiary hearing unless a petitioner has made the requisite showing under 28 U.S.C. § 2254(e)(2)(A) and (B). Eickleberry's conclusory requests for an evidentiary hearing do not suffice. For this reason, the Court denies

on the basis that it was in retaliation for his commencement of the instant suit, the federal habeas corpus statutes provide a remedy only for prisoners who are challenging the fact or duration of their confinement.  Heck v. Humphrey, 512 U.S. 477, 481 (1994); Preiser v. Rodriguez, 411 U.S. 475, 488-90 (1973); Otey v. Hopkins, 5 F.3d 1125, 1130-31 (8th Cir. 1993), cert. denied, 512 U.S. 1246 (1994).  As our Court of Appeals has clearly and succinctly explained:

> If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy.  [Citation omitted.]... Where petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his state custody, the district court lacks the power or subject matter jurisdiction to issue a writ.

Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam); see also Blum v. Floyd, No. 96-15190, 1997 WL 599370 at *1 (9th Cir. Sept. 22, 1997) (petitioner's claim of retaliatory transfer by prison officials is properly asserted under Bivens as opposed to § 2241).  While Petitioner could attempt to assert a retaliation claim and request appropriate relief under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), asserting such a claim under a § 2241 petition is not appropriate.[9]

---

Petitioner's request for a hearing.

[9]     This Court notes that Federal courts have repeatedly held that unwanted prison transfers are a normal and expectable aspect of prison life, and transfers are not the kind of "atypical and significant hardship" that implicate constitutionally protected liberty interests. Freitas v. Ault, 109 F.3d 1335, 1337 (8th Cir. 1997) (prisoner had no constitutionally protected liberty interest in remaining in a less restrictive prison environment, and he therefore was not entitled to due process before being transferred to a more restrictive institution); Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 668–69 (8th Cir. 1996) (prisoner was not entitled to due process before being transferred from a work release facility to far more restrictive housing in a state reformatory); Moorman v. Thalacker, 83 F.3d 970, 971 (8th Cir. 1996) (due process not required before effecting prisoner's transfer from minimum security facility to maximum security facility); see also

For all of the reasons stated above, Eickleberry's motion should be denied.

## IV.   RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS**

**RECOMMENDED** that:

1.      Charles Eickleberry's Petition for Writ of Habeas Corpus under 28 U.S.C. §

2241 [Docket No. 1] be **DENIED** and dismissed **WITH PREJUDICE**; and

2.      Charles Eickleberry's Motion for a Temporary Restraining Order and Order to

Show cause Why a Preliminary Injunction should not Issue [Docket No. 6] be **DENIED**.

Dated:         December 7, 2011

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties on or before **December 21, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

Olim v. Wakinekona, 461 U.S. 238, 250 (1983) (prison authorities "may transfer a prisoner 'for whatever reason or for no reason at all'") (quoting Meachum v. Fano, 427 U.S. 215, 228 (1976)).